[No. D009853. Fourth Dist., Div. One. Sept. 19, 1989.]

THE PEOPLE, Plaintiff and Respondent, v.
RON BRIAN MUNIZ, Defendant and Appellant.

[No. D009854. Fourth Dist., Div. One. Sept. 19, 1989.]

In re RON BRIAN MUNIZ on Habeas Corpus.

[Opinion certified for partial publication.[1]]

[1] Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts IV and V.

**COUNSEL**

Tyna Thall Orren, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Rudolf Corona, Jr., and Frederick R. Millar, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**TODD, J.**—A jury convicted Ron Brian Muniz of one count of forced oral copulation (Pen. Code,[2] § 288a, subd. (c)) and found true an allegation that Muniz inflicted great bodily injury on the victim within the meaning of section 12022.8. The jury acquitted Muniz of a second count of sexual penetration with a foreign object (§ 289), which had an accompanying great bodily injury allegation. The trial court sentenced Muniz to the middle term of six years on the oral copulation count and imposed an additional five years for the great bodily injury enhancement for a total sentence of eleven years in prison. Muniz appeals, raising the following arguments: (1) improper rebuttal evidence was admitted; (2) the trial court erred by not instructing on a lesser-included offense and not giving the unanimity instruction on the act(s) constituting great bodily injury; (3) the evidence was insufficient to support the jury's finding on the great bodily injury allegation; and (4) the sentence was disproportionate. In a habeas corpus petition that has been consolidated with this appeal, Muniz contends he was denied effective assistance of counsel at trial on the basis of his trial counsel's failure to (1) object to the introduction of improper rebuttal evidence and (2) move for a new trial because the trial court did not give the unanimity instruction with respect to the great bodily injury allegation.

FACTS

After completing her work shift in the early morning hours of August 11, 1987, Sherri S. went to Popeye's Bar in Costa Mesa, where she remained

---

[2] All statutory references are to the Penal Code unless otherwise specified.

until the 2 a.m. closing. As she was leaving, she spoke to Todd Harding, an acquaintance who was talking with Muniz. Muniz, whom Sherri had never seen before, asked Sherri if she "snort[ed]," which Sherri assumed was a reference to cocaine. Sherri indicated she occasionally did and accepted Muniz's invitation. Muniz and Sherri drove in Sherri's car to the parking lot next door and parked near Muniz's truck. Muniz offered Sherri "speed" (methamphetamine), but Sherri said she wanted to leave because she did not use "speed." Muniz grabbed the car keys from the ignition and told Sherri she was not going anywhere until she "sucked his dick." Sherri tried to leave the car, but Muniz grabbed her by the hair and held her inside. Sherri honked the car horn and screamed, but to no avail. In the ensuing struggle, Sherri fell out of the car onto the concrete parking lot and was rendered unconscious. Muniz exited the car, got on top of Sherri, and pulled her hair and hit her on the face and head. Muniz then pushed Sherri into the car and threatened to kill her and throw her body into a nearby ditch if she did not orally copulate him. Sherri complied out of fear. Sherri eventually arrived home that morning sometime after 4 a.m. She told her roommate what happened. Her eye was black, puffy and swelling shut; she had other marks on her face as well. She also sustained injuries to her right knee, right elbow and right buttock. A day or two after the assault, Sherri went to an ophthalmologist, but the doctor could not examine her retina until a few weeks later because her eye was closed shut.

Muniz testified that when he met Sherri he asked her "if she wanted to go outside and do a line," not mentioning any particular drug. Muniz testified Sherri wanted some cocaine for the following day and she offered to orally copulate him in exchange for his getting the cocaine. Muniz said he originally was going to "give" Sherri some methamphetamine to use then, but Sherri wanted some "extra" methamphetamine to use the next day; the oral copulation was in exchange for the "extra" methamphetamine. Muniz said Sherri was orally copulating him when she abruptly bolted up and fell out of the car onto the parking lot pavement. Muniz said Sherri apologized for "making a fool out of herself," voluntarily returned to the car and completed the oral copulation. He denied removing the car keys from the ignition and struggling with Sherri. Muniz also said Sherri had no visible injuries while she was with him and made no complaints about any injuries.

DISCUSSION

I

Muniz contends he was denied a fair trial because the trial court allowed improper and prejudicial rebuttal evidence. Specifically, he attacks (1) portions of Detective Darell Freeman's rebuttal testimony in

which Freeman related Muniz's confirmation that he had offered to pay for some of Sherri's medical expenses and (2) portions of Todd Harding's testimony during rebuttal that as he and Muniz were leaving the bar, Muniz pointed at Sherri and said he was "going to get that girl."

Muniz's trial counsel did not object to the rebuttal testimony of either Freeman or Harding. Thus, any claim of error has been waived. (*People* v. *Richards* (1976) 17 Cal.3d 614, 618, fn. 1 [131 Cal.Rptr. 537, 552 P.2d 97]; *People* v. *Mosher* (1969) 1 Cal.3d 379, 399 [82 Cal.Rptr. 379, 461 P.2d 659].) In *People* v. *Mosher, supra,* our Supreme Court said: "The order of proof, however, lies within the sound discretion of the trial court under Penal Code section 1094. In this case the defense raised no objection to the rebuttal testimony of Dr. Rapaport. In the absence of an objection to the trial court, we certainly cannot hold that it abused its discretion in permitting Dr. Rapaport to testify on rebuttal. [Citations.]" (*Id.* at pp. 399-400.)

Nevertheless, we must address the propriety of Freeman's and Harding's rebuttal testimony because Muniz has again raised the issue in his writ of habeas corpus in connection with the argument he was denied effective assistance of counsel when his attorney did not object to the testimony at trial.

## A.

Section 1093, which outlines the order of procedure to be used in criminal trials, includes subdivision (d), which allows presentation of a rebuttal case, unless the trial court, "for good reason, in furtherance of justice," allows the parties "to offer evidence upon their original case." The trial court's discretion with respect to the order of proof is further given wide breadth by Evidence Code section 320, which provides: "Except as otherwise provided by law, the court in its discretion shall regulate the order of proof." (See also *People* v. *Lanphear* (1980) 26 Cal.3d 814, 834-835 [163 Cal.Rptr. 601, 608 P.2d 689], vacated and remanded for reconsideration 449 U.S. 810 [66 L.Ed.2d 13, 101 S.Ct. 57], reiterated 28 Cal.3d 463 [171 Cal.Rptr. 505, 622 P.2d 950].)

In *People* v. *Carter* (1957) 48 Cal.2d 737 [312 P.2d 665], our Supreme Court held "proper rebuttal evidence does not include a material part of the case in the prosecution's possession that tends to establish the defendant's commission of the crime." (*Id.* at p. 753.) In *Carter,* a murder case, the prosecution did not present the defendant's red cap, which was left at the scene of the crime, until rebuttal. The defendant had testified he had not been at the scene and had not left anything there. The prosecution gave no reason for failing to produce the cap during its case-in-chief. The

Supreme Court disapproved of the prosecutor's tactics and observed rebuttal evidence "is restricted to evidence made necessary by the defendant's case in the sense that he has introduced new evidence or made assertions that were not implicit in his denial of guilt." (*Id.* at pp. 753-754.)

■ Harding's testimony that Muniz pointed to Sherri and said he was "going to get that girl," directly contradicted Muniz's testimony that (1) his intention was "just to give her . . . a line or two . . . ." and (2) the idea of romance or sex did not come up until Sherri asked for extra drugs for the next day. In presenting Harding's testimony in rebuttal, the prosecution did not withhold a material part of its case, but instead offered testimony that supported its case-in-chief after it had been controverted by Muniz. Under these circumstances, we find Harding's testimony was allowable as rebuttal evidence upon a point put into dispute by Muniz's testimony. (*People* v. *Avery* (1950) 35 Cal.2d 487, 492 [218 P.2d 527].)

Muniz argues Harding's testimony was unduly prejudicial since the trial court emphasized it during the sentencing hearing. Indeed, the trial court referred to Harding's testimony as evidence of Muniz's premeditation and subsequently cited premeditation as a factor in aggravation. This argument is somewhat unusual; typically, prejudicial effect is demonstrated with respect to lay juries. In any event, we do not find Muniz's argument persuasive; there is no showing that Harding's testimony had any undue influence on the trier of fact deciding Muniz's guilt on the charged offenses.

## B.

■ Muniz primarily attacks Freeman's rebuttal testimony that Muniz confirmed his offer to pay for some of Sherri's medical expenses as inadmissible under Evidence Code section 1152. His reliance on this statute is misplaced. Evidence Code section 1152 provides in part: "(a) Evidence that a person has, in compromise or from humanitarian motives, furnished or offered or promised to furnish money or any other thing, act, or service to another who has sustained or will sustain or claims that he or she has sustained or will sustain loss or damage, as well as any conduct or statements made in negotiation thereof, is inadmissible to prove his or her liability for the loss or damage or any part of it." Muniz would have us read into the statute the word "criminal" as an alternative modifier for liability yet he offers no reason for us to do so. Nor does the case law interpreting Evidence Code section 1152 supply any support for the notion that the statute has any application to criminal cases.[3] Moreover, even if we were to

---

[3] Nor can Muniz rely on Evidence Code section 1153.5, which provides evidence of an offer for civil resolution of a criminal complaint involving a crime against property through the

assume Evidence Code section 1152 does have application to criminal cases, Freeman's testimony would still have been proper. Neither Muniz's statement to Sherri that he would help pay her medical expenses nor his confirmation of it to Freeman was "an offer of compromise" as used in Evidence Code section 1152. ■ " '[T]he statements of a party . . . when not connected with an offer in compromise, may be proved as an admission against interest.' [Citations.]" (*Truestone, Inc.* v. *Simi West Industrial Park II* (1984) 163 Cal.App.3d 715, 725 [209 Cal.Rptr. 757].)

■ ■ There was no error in allowing either Harding's or Freeman's rebuttal testimony.

## II

■ ■ Muniz contends the trial court erred by not instructing the jury that (1) sexual battery is a lesser-included offense of forcible oral copulation and (2) to find true the great bodily injury allegation there must be unanimous agreement on which of Muniz's act or acts caused the great bodily injury. We disagree.

### A.

■ The basic definition of a necessarily included offense is set forth in *People* v. *Geiger* (1984) 35 Cal.3d 510, 517, footnote 4 [199 Cal.Rptr. 45, 674 P.2d 1303, 50 A.L.R.4th 1055]: "[A]n offense is necessarily included in the charged offense if under the statutory definition of the charged offense it cannot be committed without committing the lesser offense, or if the charging allegations of the accusatory pleading include language describing the offense in such a way that if committed as specified the lesser offense is necessarily committed." In *People* v. *Anderson* (1975) 15 Cal.3d 806, 809 [126 Cal.Rptr. 235, 543 P.2d 603], our Supreme Court noted: "[W]here the accusatory pleading is couched in terms of the statutory definition of the greater crime and no additional factual allegations are included therein, the courts necessarily must rely solely upon the statutory definition."

■ Thus, we apply the test by examining the elements of the two crimes and asking the following question: Can we conclude the greater offense could not have been committed without concomitantly satisfying the elements of the lesser offense? Here, a comparison of the statutory definitions of forcible oral copulation and sexual battery demonstrates sexual battery is not a lesser included offense.

---

assistance of the prosecutor is inadmissible. That statute is not applicable to the facts of this case.

The statutory definition of forcible oral copulation is "the act of copulating the mouth of one person with the sexual organ or anus of another . . . when the act is accomplished against the victim's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person or where the act is accomplished against the victim's will by threatening to retaliate in the future against the victim or any other person, and there is a reasonable possibility that the perpetrator will execute the threat . . . ." (§ 288a, subds. (a) & (c).)

The statutory definition of sexual battery is "touch[ing] an intimate part of another person while that person is unlawfully restrained by the accused or an accomplice, and if the touching is against the will of the person touched *and is for the purpose of sexual arousal, gratification, or abuse* . . . ." (§ 243.4, subd. (a), italics added.)

Forcible oral copulation does not require a specific intent or purpose (see also *People* v. *Brocklehurst* (1971) 14 Cal.App.3d 473, 476 [92 Cal.Rptr. 340]); sexual battery does ("for the purpose of sexual arousal, gratification, or abuse"). Additionally, the definition of sexual battery includes the element of the victim being restrained; this element is not included in the definition of forcible oral copulation. Thus, sexual battery is not a lesser included offense of forcible oral copulation,[4] and the trial court did not err in not giving a lesser included instruction.

### B.

■ It is well established that the entire jury must agree upon the commission of the same act in order to convict a defendant of the charged offense. (*People* v. *Castro* (1901) 133 Cal. 11, 13 [65 P. 13].) ■ Here, Muniz contends the testimony supported two alternative theories for Sherri's injuries: (1) she fell onto the parking lot because of a struggle with Muniz; or (2) Muniz struck her. This purported basis for disagreement among the jurors as to the cause of the injuries, Muniz claims, mandated the trial court to instruct the jury sua sponte pursuant to CALJIC No. 17.01[5] with respect to the great bodily injury allegations.

■ However, it also is well established that a trial court is not obligated to give an instruction—either requested or sua sponte—if the evidence

---

[4] Nothing in the language of the charging allegations of the accusatory pleading in this case would render sexual battery as a lesser included offense of forcible oral copulation.

[5] CALJIC No. 17.01 provides: "The defendant is charged with the offense of ―――――――. He may be found guilty if the proof shows beyond a reasonable doubt that he committed any one or more of such acts, but in order to find the defendant guilty, all the jurors must agree that he committed the same act or acts. It is not necessary that the particular act or acts committed so agreed upon be stated in the verdict." (4th ed. 1979.)

presented at trial is such as to preclude a reasonable jury from finding the instruction is applicable. (*People* v. *Schultz* (1987) 192 Cal.App.3d 535, 539 [237 Cal.Rptr. 513].) "A unanimity instruction is required only if the jurors could otherwise disagree which act a defendant committed and yet convict him of the crime charged." (*People* v. *Gonzalez* (1983) 141 Cal.App.3d 786, 791 [190 Cal.Rptr. 554], disapproved on another ground in *People* v. *Kurtzman* (1988) 46 Cal.3d 322, 330 [250 Cal.Rptr. 244, 758 P.2d 572].) In other words, "[i]f under the evidence presented such disagreement is not reasonably possible, the instruction is unnecessary." (141 Cal.App.3d at p. 792; see also *People* v. *Schultz, supra,* 192 Cal.App.3d at pp. 539-540 and *People* v. *Bergschneider* (1989) 211 Cal.App.3d 144 [259 Cal.Rptr. 219].)

 Here, the facts of this case lead us to the conclusion the trial court's failure to give CALJIC No. 17.01 was not error because the evidence was *not* such as to allow reasonable jurors to disagree as to which acts Muniz committed to cause Sherri's injuries.

First of all, Sherri did not recall receiving any injuries when she fell onto the parking lot. The next thing she knew Muniz was on top of her, pulling her hair and striking her in the face with his fist. She believed it was Muniz's blows that caused her to lose consciousness. In essence, this case amounted to a credibility contest between Muniz and Sherri, and the jury obviously concluded Sherri was more credible. Second, the physical evidence of Sherri's various injuries belies the theory that they were caused by the fall of a few feet. In order for the unanimity instruction to be significant, there must be evidence of more than one cause for the injuries. Such evidence was not present here.

Moreover, what the evidence did show was Muniz's actions—from forcing Sherri to orally copulate him during the initial struggle in the vehicle to her falling onto the parking lot to his beating her as she lay on the parking lot—constituted a continuous course of conduct. The jury unanimity rule does not apply where the act or acts constituting the charged crime amount to a continuous course of conduct. (*People* v. *Moore* (1986) 185 Cal.App.3d 1005, 1014 [230 Cal.Rptr. 237].) As this court observed in *People* v. *McIntyre* (1981) 115 Cal.App.3d 899 [176 Cal.Rptr. 3], disapproved on other grounds in *People* v. *Adams* (1986) 186 Cal.App.3d 75, 80 [230 Cal.Rptr. 588]: "The fact that a second forced oral copulation occurred within a few minutes during this sexual attack does not necessarily make this another separate crime any more than it would be true there are separate crimes of battery if the actor throws a right-hand punch to his victim and immediately follows it with a left-hand punch. Similarly, if one punch lands on the victim, the law does not require the jury to agree on

whether it was the right or the left-hand punch which reached its mark." (115 Cal.App.3d at p. 910.)

■ Accordingly, we conclude the trial court did not err in failing to give CALJIC No. 17.01 sua sponte with respect to the great bodily injury enhancement.[6]

### III

Section 12022.8 provides: "Any person who inflicts great bodily injury, as defined in Section 12022.7, on any victim in a violation of . . . oral copulation by force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person as provided in Section 286 or 288a shall receive a five-year enhancement for each such violation in addition to the sentence provided for the felony conviction." Section 12022.7 provides in pertinent part: "As used in this section, great bodily injury means a significant or substantial physical injury."

■ Muniz contends there is insufficient evidence to support the jury's finding of great bodily injury. Implicit in his contention is the argument that the injuries suffered by Sherri do not meet the legal standard for great bodily injury.

We do not believe it is appropriate for us to decide whether Muniz inflicted great bodily injury as an issue of law. ■ As the court explained in *People* v. *Salas* (1978) 77 Cal.App.3d 600, 606 [143 Cal.Rptr. 755]: "Whether the harm resulting to the victim of a robbery constitutes great bodily injury is a question of fact for the jury. [Citation.] If there is sufficient evidence to sustain the jury's finding of great bodily injury, we are bound to accept it, even though the circumstances might reasonably be reconciled with a contrary finding." Similarly, the court in *People* v. *Jaramillo* (1979) 98 Cal.App.3d 830, 836 [159 Cal.Rptr. 771], observed there is "a fine line" between those injuries that are significant or substantial and those that are not. The *Jaramillo* court concluded: "Clearly it is the trier of fact that must in most situations make the determination." In *People* v. *Wolcott* (1983) 34 Cal.3d 92, 107 [192 Cal.Rptr. 748, 665 P.2d 520], our Supreme Court, citing *Salas* and *Jaramillo,* also declined to decide whether the defendant inflicted great bodily injury as an issue of law.

---

[6] Thus, it is unnecessary for us to address the Attorney General's argument that the rule of jury unanimity does not apply to a finding of great bodily injury enhancement. (See *People* v. *Robbins* (1989) 209 Cal.App.3d 261 [257 Cal.Rptr. 60].)

 ██ Here, applying the standards of appellate review to a claim of insufficiency of the evidence,[7] we conclude there is substantial evidence to support the jury's determination of great bodily injury. Sherri sustained severe injuries to her eye. It was "completely black, blue, purple, completely swollen shut" and "three to four times the size of a normal eye." The swelling protruded past the point of the nose. She went to an ophthalmologist a day or two after the assault, but the doctor could not examine the retina because the eye was closed shut. She had to return a few weeks later for a follow-up examination. Sherri's bruises had not completely healed at the time of the trial—four months after the assault. Sherri testified she lost consciousness and she described the force of Muniz's blows as so severe that it "felt like splinters going through my skull. And I saw like white lights in front of my eyes."

Muniz's reliance on *People* v. *Caudillo* (1978) 21 Cal.3d 562 [146 Cal.Rptr. 859, 580 P.2d 274] is misplaced. *Caudillo* held that various physical effects—gagging, vomiting, defecation and superficial cuts—suffered during a violent sexual attack did not constitute great bodily injury. The *Caudillo* court described such injuries as "transitory and short-lived bodily distress" (at p. 588), and concluded they did not fall within the statutory definition of " 'a significant or substantial physical injury' " (at p. 589). Here, Sherri's injuries, while not permanent, were more than merely transitory. Her bruises lasted four months. While the injury to her eye did not cause permanent damage, it can by no means be characterized as superficial. And as the court in *Wolcott, supra,* noted: "Subsequent decisions, however, indicate that injuries slightly more severe than those sustained by the victim in *Caudillo* will qualify as 'great bodily injury.' " (*Wolcott, supra,* 34 Cal.3d at p. 107.) For example in *Jaramillo, supra,* 98 Cal.App.3d 830, the child victim of a beating suffered multiple contusions on her hands, arms, and buttocks that caused painful swelling and left severe discoloration, and in *People* v. *Sanchez* (1982) 131 Cal.App.3d 718 [182 Cal.Rptr. 671], the victim of a rape incurred multiple abrasions and lacerations, a swollen and bruised eye and a swollen left cheek.

Nor can Muniz rely on remarks by various court officials—the prosecutor at the preliminary hearing, the magistrate and even the trial court—questioning whether Sherri's injuries constituted great bodily injury. Whether Sherri's injuries constituted great bodily injury was a question of fact for the jury. On this record, there was substantial evidence to support the jury's determination on this question.

---

[7]The test is simply " 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (*People* v. *Johnson* (1980) 26 Cal.3d 557, 576 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255].)

IV, V*

. . . . . . . . . . . . . . . . . . . . . .

DISPOSITION

Judgment affirmed. Writ denied.

Work, Acting P. J., and Benke, J., concurred.

Appellant's petition for review by the Supreme Court was denied December 13, 1989.

---

*See footnote 1, *ante,* page 1508.