Filed 12/17/14  P. v. Williams CA3

## NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### THIRD APPELLATE DISTRICT

(Sacramento)

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>DOMONICK ANTIWON WILLIAMS,<br><br>    Defendant and Appellant. | C074696<br><br>(Super. Ct. No. 12F01204) |

After his two-year-old son sustained second and third degree burns to his foot, buttocks, and scrotum, defendant Domonick Antiwon Williams was convicted of one count of child abuse/endangerment under circumstances likely to produce great bodily harm or death (Pen. Code, § 273a, subd. (a)).[1]  The jury also found true an allegation defendant personally inflicted great bodily injury on the victim, a child under 5, within the meaning of section 12022.7, subdivision (d).  In a bifurcated proceeding, the trial

---

[1] Further undesignated statutory references are to the Penal Code.

1

court found true allegations defendant had one prior strike conviction, (§§ 667, subds. (b)-(i); 1170.12), one prior serious felony conviction (§ 667, subd. (a)), and served one prior prison term (§ 667.5, subd. (b).)[2]

At trial, the People argued the jury could convict defendant of the crime of child abuse/endangerment either because he (1) willfully inflicted unjustifiable physical pain on the victim by placing him in scalding hot water (which we shall refer to as child abuse), or (2) willfully caused or permitted the victim to suffer unjustifiable physical pain by failing to get medical care for the victim's injuries after creating the circumstances that caused those injuries, namely placing the victim in the tub, turning on the water, and leaving him there while the water temperature continued to increase to the point that it burned the victim (which we shall refer to as child endangerment). The trial court refused to instruct the jury that it had to unanimously agree on child abuse or child endangerment as the basis for the guilty verdict.

On appeal, defendant's primary contention is that the failure to give a unanimity instruction (CALCRIM No. 3500) was prejudicial because some of the jurors may have found him guilty of child abuse while others may have found him guilty of child endangerment. We agree with defendant that the trial court erred in failing to give a unanimity instruction; however, we shall conclude the error was harmless based on the jury's finding that defendant personally inflicted great bodily injury on the victim. As we shall explain, the jury was (erroneously) instructed that the great bodily injury enhancement required an *act* on the part of defendant rather than an *omission*; thus, the

---

**2** Defendant was sentenced to an aggregate term of 21 years in state prison, consisting of 12 years (the upper term, doubled for the prior strike) for child abuse/endangerment, a consecutive 4 years for the great bodily injury enhancement, plus 5 years for the prior serious felony conviction. The court stayed defendant's sentence for the prior prison term pursuant to section 654.

jury necessarily found that defendant either willfully inflicted unjustifiable physical pain on the victim by placing him in scalding hot water or willfully caused or permitted the victim to suffer the same by placing him in the tub, turning on the water, and leaving him there while the water temperature continued to increase to the point that it burned him. Because these are simply two ways of committing a single discrete crime, the failure to give a unanimity instruction was harmless. (See *People v. Russo* (2001) 25 Cal.4th 1124, 1132 (*Russo*).)

We shall also conclude that defendant forfeited his challenge to the trial court's instructions, and in any event, his challenge lacks merit.

Accordingly, we shall affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

In April 2011, defendant was living in an apartment with his girlfriend and their four children, including the two-year-old victim. On April 18, 2011, defendant telephoned his neighbor and asked if he could borrow some Vaseline or other ointment for a light burn on the victim's buttocks.

The next morning, the neighbor watched the victim while defendant's girlfriend was at an appointment and defendant was out. When the neighbor attempted to change the victim's diaper, she noticed that the diaper was stuck to the victim's skin. After carefully removing the diaper, she saw that the skin on the victim's buttocks was red and bubbly and was peeling. She also noticed the victim's sock was bloody. After cutting the sock off the victim's foot, she saw that the skin on his foot was peeling and red and looked like a "huge scar." The neighbor concluded that the victim required medical treatment, telephoned defendant's girlfriend, and demanded that she pick the victim up and take him to the hospital. When defendant's girlfriend vacillated over taking the victim to the hospital, the neighbor telephoned 911 and handed the girlfriend the phone.

The victim was transported to UC Davis Medical Center and then to Shriner's Children's Hospital. Dr. David Greenhalgh, a burn surgeon at Shriner's, diagnosed the

3

victim with second degree burns to his buttocks and scrotum and third degree burns to his left foot that required skin grafts. Greenhalgh, who also testified as a burn expert for the prosecution, explained that "[t]he classic scald intentional burn is one where a child is dipped into hot water" and results in burns to the buttocks and feet.

Defendant was interviewed by law enforcement three times. During the first interview, he said that he had placed the victim in the bath after the victim soiled his underwear. The water felt lukewarm, so he turned it a little colder so that the victim could sit in it while defendant left to dispose of the victim's underwear. When defendant returned 45 seconds to a minute later, the victim was standing in the corner of the tub and complaining the water was too hot. Defendant felt the water, and it "burned." He explained that the water in his apartment "takes less than five seconds to get . . . scalding hot." Defendant believed that the victim had turned the water from cold to hot while defendant was out of the room and burned himself. Defendant saw that the victim's skin was peeling when he finished washing him.

During the second interview, defendant's version of events was similar to that given during the first interview, with the following variations and additions. When defendant placed the victim in the tub, the victim was squatting, as opposed to sitting. When defendant returned to the bathroom after disposing of the victim's underwear, the temperature control knob was turned all the way to "hot," and when defendant asked the victim if he had "mess[ed]" with the water, the victim stated that he had. Defendant explained that the water in his apartment gets "ridiculously" hot, "like boiling water off the stove type [of] hot." Defendant took the victim out of the tub and dried him off. When he finished, he noticed there were blisters on his skin. Defendant telephoned his parents and told them that the victim had burned himself, and his parents came to his apartment. His mother told him to put gauze on the burns and then put a diaper on over the gauze. Meanwhile, his father telephoned a triage nurse, who advised him to put ointment on the burns and leave them uncovered so that they could air out. By that time

4

his girlfriend had already covered the burns, so they kept them covered. The next morning the burns looked about the same, so they applied more ointment and put the victim in a loose pair of underwear.

During the third interview, defendant eventually agreed that the water was too hot when he placed the victim in the tub, although he did not know it at the time. When he realized the water was too hot, he picked the victim up and placed him in the back of the tub, turned off the water, and opened the drain. The victim was already burned when defendant left the bathroom to dispose of the victim's underwear, and when he returned, he saw the victim's skin was peeling.

DISCUSSION

I

The Trial Court Erred in Failing to Give a Unanimity Instruction, but the Error Was Harmless

Defendant contends the trial court prejudicially erred in refusing his request for a unanimity instruction "[b]ecause the prosecution argued that multiple discrete acts by [defendant] rendered him liable for" child abuse/endangerment. The People essentially concede the error, but argue it was harmless given the jury's true finding on the great bodily injury enhancement. We agree with the People.

*A.     Background*

Defendant was charged in an amended information with one count of felony child abuse/endangerment. (§ 273a, subd. (a).)[3] The information also alleged that in the

---

[3] Section 273a, subdivision (a) reads: "Any person who, under circumstances or conditions likely to produce great bodily harm or death, willfully causes or permits any child to suffer, or inflicts thereon unjustifiable physical pain or mental suffering, or having the care or custody of any child, willfully causes or permits the person or health of that child to be injured, or willfully causes or permits that child to be placed in a situation where his or her person or health is endangered, shall be punished by imprisonment in a county jail not exceeding one year, or in the state prison for two, four, or six years."

5

commission of that offense, defendant personally inflicted great bodily injury upon the victim, a child under the age of five. (§ 12022.7, subd. (d).)[4]

At trial, the prosecutor's primary argument was that defendant was guilty of child abuse because he willfully placed the victim into a tub of hot water to teach the victim a lesson. The prosecutor's secondary argument was that defendant was guilty of child endangerment because he "caused or permitted [the conditions] which led to [the victim] suffering . . . ."[5] In support of his secondary argument, the prosecutor relied on evidence defendant placed the victim in the tub, turned on the water, and left him there while the water temperature continued to increase to the point that it burned the victim, as well as evidence defendant failed to seek medical care for the victim's injuries although he saw that the victim's skin was peeling and knew his condition had not improved by the following morning.

During deliberations the jury asked a number of questions about the personal infliction component of the great bodily injury enhancement.[6] Among other things, the jury asked, "Can great bodily injury be personally inflicted . . . through an act &/or

---

[4] Section 12022.7, subdivision (d) reads: "Any person who personally inflicts great bodily injury on a child under the age of five years in the commission of a felony or attempted felony shall be punished by an additional and consecutive term of imprisonment in the state prison for four, five, or six years."

[5] Child abuse (direct infliction of abuse) requires a mens rea of general intent, while child endangerment (indirect infliction of abuse) requires a lesser state of mind (criminal negligence). (*People v. Valdez* (2002) 27 Cal.4th 778, 789.)

[6] To find the great bodily injury enhancement true, the jury had to conclude that defendant *personally* inflicted great bodily injury on the victim during the commission of the child abuse/endangerment. (§ 12022.7, subd. (d).) The pattern jury instruction for the enhancement, CALCRIM No. 3162, does not define personally inflicted.

6

omission of an act?" The trial court responded, "Personal infliction requires an act rather than an omission of an act." The jury also asked, "What does 'personally inflicted' mean," and whether it is "different than 'willfully caused' " as defined in the jury instructions concerning child abuse/endangerment. The trial court responded, " 'Personally inflicted' . . . means that the defendant personally did an act that resulted in great bodily injury to [the victim]," and that "[d]epending on what you find the facts to be, 'willfully caused' . . . can encompass either a personal act by the defendant of inflicting injury or a failure to act by the defendant which caused a child to suffer unjustifiable physical pain." After the jury submitted its ninth question, the trial court determined additional argument from the parties was in order.

During his supplemental argument, the prosecutor argued, "There is one person that caused [the victim's] injur[ies], one person. Wasn't [the victim]." It was defendant. The prosecutor told the jury that if they believed the first theory -- that defendant intentionally placed the victim in hot water -- defendant clearly caused the injury and was "guilty of not only the charge but the allegation of [personal infliction of] great bodily injury is also true." Alternatively, the prosecutor asserted that defendant's "reckless actions" caused the victim's injuries in that "he knew how hot the water got. He turned on the water too hot. He put his son in that tub and left him there for one to three minutes." The prosecutor repeatedly dismissed the defense's claim that the victim reached up and turned the knob himself as unsupported by the evidence. The prosecutor told the jury, "Because of the defendant's reckless actions, putting his son in water that was too hot and leaving him in that water under this [second] theory, the child suffered pain or mental suffering. And a reasonable person would not have acted that way. He's guilty under that theory."

B.     Law

"It is well established that the entire jury must agree upon the commission of the same act in order to convict a defendant of the charged offense." (*People v. Muniz*

7

(1989) 213 Cal.App.3d 1508, 1517.) "When a defendant is charged with a single [crime] but the evidence reveals more than one [criminal] act, the prosecution must either select the particular act upon which it relies to prove the charge or the jury must be instructed that it must unanimously agree beyond a reasonable doubt that defendant committed the same specific criminal act. [Citations.] The unanimity requirement is constitutionally rooted in the principle that a criminal defendant is entitled to a verdict in which all 12 jurors concur, beyond a reasonable doubt, as to each count charged." (*People v. Brown* (1996) 42 Cal.App.4th 1493, 1499-1500; see Cal. Const., art. I, § 16.) Even when the defendant does not request a unanimity instruction, "such an instruction must be given sua sponte where the evidence adduced at trial shows more than one act was committed which could constitute the charged offense, and the prosecutor has not relied on any single such act." (*People v. Dieguez* (2001) 89 Cal.App.4th 266, 274-275.)

C.    *Analysis*

Here, the prosecution offered evidence of, and argued, defendant's guilt based on essentially three theories. The prosecution's argument that defendant was guilty of child abuse rested on evidence defendant intentionally placed the victim in scalding hot water. In contrast, the prosecution's argument that defendant was guilty of child endangerment rested on evidence defendant (1) placed the victim in the tub, turned on the water, and left him there while the water temperature continued to increase to the point that it burned the victim and/or (2) failed to get medical care for the victim's those injuries.

It is true that under California law, "where the evidence shows only a single discrete crime but leaves room for disagreement as to exactly how that crime was committed or what the defendant's precise role was, the jury need not unanimously agree on the basis or, as the cases often put it, the 'theory' whereby the defendant is guilty." (*Russo*, *supra,* 25 Cal.4th at p. 1132.) That rule does not excuse giving a unanimity instruction in this case, however, because under the evidence in this case child abuse

8

based on placing the child in scalding hot water is a "discrete crime" from failing to seek medical care for the victim.[7]

It has been noted that juror unanimity is not required when the crime charged involves a continuous course of conduct or a series of acts over a period of time, and felony child abuse under subdivision (a) of section 273a can be such a crime. (*People v. Napoles* (2002) 104 Cal.App.4th 108, 115.) However, "child abuse is not invariably charged as a course of conduct offense; one act or omission constituting abuse may be sufficient for conviction." (*Id.* at p. 116.) Such is the case here. Here, two of the acts the prosecution sought to prove as the basis for the crime -- placing the victim in scalding hot water and failing to seek medical care for the victim -- were not "so closely connected that they form[ed] a single transaction or . . . a continuous course of conduct." (*People v. Rae* (2002) 102 Cal.App.4th 116, 122.) The jury could have believed defendant negligently failed to seek medical care for the victim's injuries without believing defendant willfully inflicted those injuries in the first place. Under these circumstances, the failure to give a unanimity instruction was error.

There is a split of opinion in the Courts of Appeal as to whether the erroneous failure to give a unanimity instruction is analyzed under the state law standard of harmless error of *People v. Watson* (1956) 46 Cal.2d 818 or the federal law standard of *Chapman v. California* (1967) 386 U.S. 18 [17 L.Ed.2d 705]. (See *People v. Wolfe* (2003) 114 Cal.App.4th 177, 185-186 [describing the split].) This court has long applied the federal standard. (See *People v. Deletto* (1983) 147 Cal.App.3d 458, 470-472; *People*

---

[7] It is not a discrete crime from placing the victim in the tub, turning on the water, and leaving the victim there while the water temperature continued to increase to the point that it burned the victim. Rather, that is simply another way the victim could have been burned. (See *Russo, supra,* 25 Cal.4th at p. 1132.)

*v. Thompson* (1995) 36 Cal.App.4th 843, 853; *People v. Sanchez* (2001) 94 Cal.App.4th 622, 634.) "[U]nder the mandate of *Chapman* . . . we must ultimately look to the evidence considered by defendant's jury under the instructions given in assessing the prejudicial impact or harmless nature of the error." (*People v. Harris* (1994) 9 Cal.4th 407, 428.) "[W]e must inquire whether it can be determined, beyond a reasonable doubt, that the jury actually rested its verdict on evidence establishing the requisite [elements of the crime] independently of the force of the . . . misinstruction. [Citation.]" (*Id.* at p. 429.)

The People contend the omission was harmless because the jury's finding that defendant personally inflicted great bodily injury in the commission of the child abuse/endangerment offense means that the jury necessarily (1) "rejected [the] defense that [the victim] had turned the knob on his own and burned himself," and (2) "unanimously found [defendant] guilty of child abuse under theory A [intentionally placing the victim in scalding hot water]." In support of their assertion, the People note that "[t]he jury was twice instructed that personal infliction, a requisite for the enhancement, required an act on the part of [defendant] rather than an omission . . . ."[8]

We agree with the People that the error is harmless but for slightly different reasons. We agree that the jury's finding on the great bodily injury enhancement establishes the jury necessarily rejected the defense theory that the victim "had turned the

---

[8] As both parties acknowledge, the trial court incorrectly instructed the jury that personal infliction "requires an act rather than an omission of an act." (See *People v. Warwick* (2010) 182 Cal.App.4th 788, 795 (*Warwick*) [personal infliction "does not preclude the failure to act where action is required"].) The court's error, however, is of no consequence where, as here, the question before us is whether *this jury's* finding that defendant personally inflicted great bodily injury on the victim shows beyond a reasonable doubt that it unanimously agreed defendant burned the victim. In making that determination, we consider the instructions actually given.

10

knob on his own and burned himself." We disagree, however, with their conclusion that the jury unanimously found defendant guilty of child abuse based on the theory he intentionally placed the victim in scalding hot water. While the jury could have based its verdict on that theory, it also could have found defendant was guilty of child endangerment based on the theory he placed the victim in the tub, turned on the water, and left him there while the water temperature continued to increase to the point that it burned the victim. As detailed above, "where the evidence shows only a single discrete crime but leaves room for disagreement as to exactly how that crime was committed or what the defendant's precise role was, the jury need not unanimously agree on the basis or . . . 'theory' whereby the defendant is guilty." (*Russo, supra,* 25 Cal.4th at p. 1132.) That is what we have here. Because the jury need not have unanimously agreed as to the precise way in which defendant personally caused the burns to the victim's body, the failure to give a unanimity instruction was harmless beyond a reasonable doubt. (*People v. Deletto*, *supra*, 147 Cal.App.3d at p. 472.)

## II
## Defendant Forfeited His Challenge to the Trial Court's Instructions, and in Any Event, His Challenge Lacks Merit

Defendant next contends that the trial court's responses to the jury's questions concerning the "personal infliction" component of the great bodily injury enhancement "erroneously led the jury to believe that if [his] negligence proximately caused the child's injuries, then liability for the [great bodily injury] enhancement would attach," and that he was prejudiced by the error. More particularly, defendant asserts that, based on the instructions given, the jury could have concluded that defendant's "*omission* led the child to injure himself, and the end result was that he suffered great bodily injury." (Italics added.)

11

As an initial matter, defendant forfeited the issue by failing to object and by apparently agreeing to the court's responses to the jury's questions. (*People v. Turner* (2004) 34 Cal.4th 406, 437; *People v. Martinez* (2003) 31 Cal.4th 673, 698.)

In any event, his contention lacks merit. First, the trial court specifically instructed the jury that personal infliction "requires an act rather than an omission of an act." Thus, contrary to defendant's assertion, the trial court's instructions did not permit the jury to conclude that defendant's omission led the child to injure himself. Second, as set forth above, even assuming the instructions did permit the jury to base its finding on an omission or failure to act, such a finding is *not* precluded under the law. A defendant may directly cause a victim's injuries by failing to act. (*Warwick, supra,* 182 Cal.App.4th at p. 795.)

In *Warwick*, the defendant gave birth to a child at home, did not tell anyone, and did not wrap the baby in a blanket. (*Warwick, supra,* 182 Cal.App.4th at p. 790.) By the time the baby was discovered several hours later, it was in severe distress. (*Ibid*.) A jury found the defendant guilty of child abuse and neglect under section 273a, subdivision (a), and found true an allegation she personally inflicted great bodily injury on her child (§ 12022.7, subd. (d)). On appeal, the defendant argued that she did not " 'personally inflict' " the child's injuries because " 'personally inflicts' " does not include " 'injuries that are the result of a passive failure to act.' " (*Warwick,* at p. 793.) According to the defendant, " 'affirmative action' [was] required." (*Id.* at p. 795.) In support of her assertion, the defendant relied on our Supreme Court's interpretation of section 12022.7, subdivision (a): " 'Commonly understood, the phrase "personally inflicts" means that someone "in person" [citation], that is, directly and not through an intermediary, "cause[s] something (damaging or painful) to be endured" [citation].' [Citation.]" (*Warwick,* at p. 794, quoting *People v. Cross* (2008) 45 Cal.4th 58, 68.) In rejecting the defendant's assertion that affirmative action was required, the Court of Appeal found that the definition set forth in *People v. Cross* "does not preclude the failure to act where

12

action is required, and in this case, action was most certainly required." (*Warwick,* at p. 795.) According to the court, "Overwhelming evidence supports the conclusion that defendant's actions and *inaction* were the direct as well as proximate cause of her child's injuries." (*Id.* at p. 793, italics added.)

In his reply brief, defendant attempts to distinguish *Warwick* on the ground that "unlike in the *Warwick* case, there was . . . an intermediary, namely the child himself who could have conceivably turned the faucet to the hot position as defense counsel argued. If the jury had found this to reflect the truth, the child and not [defendant] would have directly cause[d] the injuries that he sustained." We are not persuaded. First, the definition of personal infliction upon which defendant relies, which requires that the injury be caused "directly and not through an intermediary," pertains to subdivision (a) of section 12022.7. Unlike subdivision (d) of section 12022.7, at issue here, subdivision (a) does not pertain to the infliction of great bodily injury upon a child under the age of five. Rather, it pertains to the infliction of great bodily injury upon "*any person* other than an accomplice . . . ." (§ 12022.7, subd. (a), italics added.) Thus, the court did not have occasion to contemplate the circumstance we are presented with here, where the defense is that the child performed the ultimate act that results in injury. Moreover, we reject the notion that the victim, a two-year-old-child, acted as an intermediary to cause his own injuries even if it was determined that he turned the knob on his own, causing the water temperature to increase. Had defendant handed the victim a butcher knife and had the victim used it to cut himself, would we say defendant only proximately but not directly caused the child's injury? Of course not. The result is no different here.

DISPOSITION

The judgment is affirmed.

                                                                                                       __BLEASE_____, Acting P. J.

We concur:

__ROBIE_____, J.

__MAURO_____, J.