Filed 7/5/16  P. v. Patton CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.111.5.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JAMES PATTON and JEFFREY ED BUTLER, JR.,<br><br>    Defendant and Appellant. | 2d Crim. No. B260915<br>(Super. Ct. No. GA092458-01,02)<br>(Los Angeles County) |

James Patton appeals his conviction by jury for assault with great bodily injury (count 1; Pen. Code, §§ 245, subd. (a)(4), 12022.7, subd. (a))[1], second degree robbery with personal use of a firearm and a gang enhancement (count 2; §§ 211; 12022.53, subd. (b); 186.22, subd. (b)(1)(C)), and unlawful possession of a firearm (count 3; § 29800, subd. (A)(1)).  Patton's cohort, Jeffrey Ed Butler, Jr., was convicted by the same jury of assault with great bodily injury (Count 1; §§ 245, subd. (a)(4), 12022.7, subd. (a)).  Patton and Butler each admitted suffering a prior strike conviction (§§ 667,

---

[1]   All statutory references are to the Penal Code unless otherwise stated.

subd. (d); 1170.12, subd. (b)) and a prior serious felony conviction (§ 667, subd. (a)(1)), and were sentenced to 22 years state prison and 12 years state prison respectively.[2]

Patton and Butler appeal.  We modify Patton's sentence to reflect that he was awarded two additional days presentence custody credit, and affirm the judgment as modified.  We affirm Butler's judgment.

*Facts*

Patton and Butler are active members of the Pasadena Denver Lanes (PDL) a Blood criminal street gang.  In 2013, Patton asked Nathan Lee (aka Fidget), to "put in some work" and shoot some Crips for the gang.  Lee (age 34), a former PDL gang member, had renounced his gang membership in 2006 while serving a prison sentence for gang related crimes.  Lee told them "Hell No" and that he was "too damn old to be doing some crazy stuff like that."

On February 19, 2014, Patton and Butler flagged Lee down in front of the Adams' house, a PDL hangout.  Lee was told "You have an issue."  Patton brandished a .38 snub nose revolver and Butler had a .32 caliber chrome revolver in his pocket.  Patton ordered Lee into the yard.  Lee asked "What did I do?"  Patton responded, "You ran out on the homies in the pen [i.e., prison].  Now you are walking up and down the streets like everything cool."  Patton punched Lee in the face, reached into Lee's pocket, and took

---

[2]  Patton's sentence was based on the following sentence calculation:  Selecting count 2 (second degree robbery) as the principal term, the trial court imposed a two-year low term doubled to four years based on the prior strike, plus 10 years for personal use of a firearm (§ 12022.53, subd. (b)) and five years on the serious felony enhancement (§ 667, subd. (a)).  On count 1 for assault, the trial court imposed a one year sentence (one-third the midterm) doubled to two years on the prior strike, plus one year on the great bodily injury enhancement (§ 12022.7, subd. (a)).  The three year sentence was ordered to run consecutive to the 19 year sentence on count 2, for an aggregate term of 22 years.  With respect to count 3 (felon in possession of a firearm), the trial court imposed and stayed a 16 month sentence (eight months doubled to 16 months based on the prior strike).

Butler's 12-year sentence was based on a 2-year low term on count 1 for assault doubled to four years based on the prior strike, plus three years on the great bodily injury enhancement and five years on the prior serious felony enhancement.

$70 cash and a cell phone. Patton said that Lee was "in violation" and hit him in the face with a Hennessey liquor bottle.

Othella Adams (aka Mama Fig), the owner of the house, came out and said, "Ya'll' can't be doing this out here . . . [B]ring it in the house." Patton, Adams, and Adams' sons lived in the house.

Patton punched Lee and ordered him to get in the house and take his shoes off. Patton told Butler to help him "get this fool." Butler hit Lee in the face and head, knocking Lee to the floor. Lee "balled up" to protect himself and was kicked so many times that he passed out and woke up to a kick to the face.

Brandishing a kitchen knife, Patton threatened to "cut [him] up" if Lee did not turn over his car keys. Lee phoned his brother and told him to give the car keys to Patton. Patton left with Butler to get the keys and said, "when we get back we are gonna break all the teeth out of his mouth, . . ."

Grabbing his shoes and phone, Lee fled the house and called 911. Lee told the 911 operator that Blood gang members were trying to kill him and identified Patton by name. Lee told the investigating officer that he was beaten and robbed for not putting in work for the gang. Lee was in severe pain and went to the hospital the next day. He had two broken teeth and a broken nose that radiated pain to his mouth, head, and neck. A dentist extracted the broken teeth.

Two days after the assault, officers served a search warrant and found a .38 caliber snub nose Taurus revolver in Othella Adams' house. Lee said it was the same handgun used by Patton to rob him.

Los Angeles County Sheriff's Detective Derric Taylor, a gang expert, testified that the PDL was a black criminal street gang. Patton (aka YG Stupid) and Butler (aka Rick Rock) were active gang members and Lee was a former gang member. Detective Taylor opined that the robbery and assault were committed for the benefit of the PDL gang.

Butler asserted an alibi defense and claimed that he was at home with his mother.

3

Patton claimed that he and Lee argued about money but there was no assault or robbery. Othella Adams testified that Lee was not punched or kicked. On cross-examination, Adams denied that her nickname was "Mama Figueroa" or that her house was a PDL gang hangout. Adams was flippant and denied knowing that her son belonged to the PDL or that Patton and Butler were PDL gang members.

*Great Bodily Injury*

Butler argues that the evidence does not support the great bodily injury (GBI) enhancement even though Lee was beaten and kicked for almost 30 minutes, causing him to suffer a broken nose and broken teeth. Lee could not sleep and the pain was intense when he drank or ate something cold or warm. The day after the beating, Lee called an ambulance and was transported to the hospital for treatment.

Butler asserts that a broken nose and broken teeth do not qualify as great bodily injury, which requires "significant or substantial . . . injury." (§ 12022.7, subd. (f).)[3] "Proof that a victim's bodily injury is 'great' — that is, significant or substantial within the meaning of section 12022.7 — is commonly established by evidence of the severity of the victim's physical injury, the resulting pain, or the medical care required to treat or repair the injury. [Citations.]" (*People v. Cross* (2008) 45 Cal.4th 58, 66.) The injury need not be so grave as to cause the victim permanent, prolonged or protracted bodily harm. (*Id.*, at p. 64.)

Butler argues that no one saw Lee's nose bleed and he suffered no bruises or cuts to his head. Although Lee was in extreme pain the next day, the paramedic report and hospital records do not say that he had bruises, swelling, scratches, abrasions, or bleeding. The same argument was rejected by the jury. On appeal, we are precluded from reweighing the evidence or determining the credibility of the witnesses. (*People v.*

---

[3]   The jury received a CALCRIM 3160 instruction that stated in pertinent part: "Great bodily injury means significant or substantial physical injury. It is an injury that is greater than minor or moderate harm."

*Ochoa* (1993) 6 Cal.4th 1199, 1206.)  In the end, "it is the *jury*, not the appellate court, which must be convinced of the defendant's guilt beyond a reasonable doubt. [Citation.] . . .  If the circumstances reasonably justify the jury's findings, the reviewing court may not reverse the judgment merely because it believes that the circumstances might also support a contrary finding.  [Citations.]"  (*People v. Ceja* (1993) 4 Cal.4th 1134, 1139.)

Butler contends that Lee's injuries were minor but a broken nose and teeth are sufficient to support a GBI enhancement.  (See e.g., *People v. Nava* (1989) 207 Cal.App.3d 1490, 1498-1499 [jury "very easily" could find broken nose constituted great bodily injury as a matter of fact, though such conclusion was not compelled as a matter of law]; *People v. Hale* (1999) 75 Cal.App.4th 94, 108 [victim suffered broken and smashed teeth, split lip and cut under eye]; *People v. Kinman* (1955) 134 Cal.App.2d 419, 421-422 [four loose teeth, two black eyes, two cuts requiring stitches]; *People v. Jaramillo* (1979) 98 Cal.App.3d 830, 836 [contusions, swelling, and severe discoloration visible day after infliction].)  Section 12022.7 does not require permanent, prolonged, or protracted disfigurement, or loss of bodily function.  (*People v. Escobar* (1992) 3 Cal.4th 740, 750; *People v. Mendias* (1993) 17 Cal.App.4th 195, 205; see e.g., *People v. Muniz* (1989) 213 Cal.App.3d 1508, 1520 [bruises lasting four months]; *People v. Sanchez* (1982) 131 Cal.App.3d 718, 733 [multiple abrasions, lacerations, swelling and bruising].)  Appellants kicked, beat, and hit Lee, breaking his nose and teeth.  Substantial evidence supports the finding that appellants inflicted great bodily injury during the course of an assault.

*Prior Inconsistent Statement*

Patton argues that the trial court erred in excluding Lee's prior inconsistent statement to Othella Adams.  Adams testified that Patton and Lee argued about money but there was no physical altercation.  After Patton left, Lee allegedly told Adams what was going on.

Lee was called as a defense witness and denied having such a conversation with Adams.  Lee also denied that he and Patton argued about money or that Patton accused him of stealing money.

5

Patton asked leave of court to recall Othella Adams "to put in the prior inconsistent statement." The trial court denied the request because Adams "already stated there was a conversation. You were allowed to get some contemporaneous statements in. [¶] We are not going to keep recalling witness[es] to say, did you know? I didn't. Yes, you did. No, I didn't." The trial court correctly ruled that Adams could not testify about the content of Lee's conversation.

Patton argues that Lee owed him money and that it contradicted Lee's statement that he was beaten up for renouncing his gang membership. If that was Patton's "defense," it was already established. Adams testified that Patton and Lee argued about money and that Lee talked to her about it. Lee denied ever having such a conversation. The jury was asked to consider Adams' and Lee's contradictory statements and instructed: "If you decide that a witness deliberately lied about something significant in the case, you should consider not believing anything that witness says." (CALCRIM 226.)

The trial court correctly ruled that recalling Adams to repeat her testimony did not add anything to the case. (See e.g., *People v. Douglas* (1990) 50 Cal.3d 468, 509 [exclusion of collateral impeachment evidence].) Trial courts have broad discretion to exclude impeachment evidence that is cumulative, collateral, or misleading. (*Ibid*.; *People v. Price* (1991) 1 Cal.4th 324, 412.) Evidence Code section 352 "empowers courts to prevent criminal trials from degenerating into nitpicking wars of attrition over collateral credibility issues." (*People v. Wheeler* (1992) 4 Cal.4th 284, 296.) Patton's case citations are distinguishable and discuss a defendant's right to cross-examine a key witness (*United States v. Williams* (9th Cir. 1981) 668 F.2d 1064, 1067), the admissibility of bias and motive evidence (*United States v. Hudson* (1st Cir. 1992) 970 F.2d 948, 957-958), and the exclusion of out-of-court statements that implicate a co-conspirator declarant and exonerate the defendant (*Chia v. Cambra* (9th Cir. 2004) 360 F.3d 997, 1004). Here, Patton sought to introduce cumulative hearsay regarding the same inconsistent statement. Adams testified that she heard Lee and Patton argue about

6

money: I "just kept hearing them say money and Mr. Lee kept saying he didn't owe him money. Just money."

"Q. [Patton's attorney] Now, I am not going to keep on going with this, but at any time after that, . . . did you hear them arguing about anything aside from, you owe me money[?] No, I don't. You stole my money. No, I didn't."

"A. I just heard money."

Patton sought leave to recall Adams to testify a second time about the same out-of-court statement. The trial court reasonably concluded that it was cumulative. (Evid. Code, § 352; *People v. Mayfield* (1997) 14 Cal.4th 668, 748.) A defendant has no due process right to present impeachment evidence that is repetitive, cumulative, confusing, or misleading. (*People v. Price* (1991) 1 Cal.4th 324, 412.) "'[T]he Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.' [Citation.]" (*Delaware v. Van Arsdall* (1986) 475 U.S. 673, 679 [89 L.Ed.2d 674, 683]; *People v. Greenberger* (1997) 58 Cal.App.4th 298, 350.) Appellant makes no showing that the ruling was arbitrary, capricious, or resulted in a manifest miscarriage of justice. (*People v. Rodriguez* (1999) 20 Cal.4th 1, 9-10.)

The error, if any, in excluding duplicative impeachment evidence was harmless under any standard of review. (*Chapman v. California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 710-711]; *People v. Watson* (1956) 46 Cal.2d 818, 836.) Appellants' guilt was established by Lee's 911 call, by his injuries, by Lee's prison record and prior gang membership, by Adams' testimony that Patton confronted Lee outside the house, by the discovery of the .38 revolver in Adams' house, and by the gang expert testimony. Lee did not waver in his testimony that he was robbed, beaten, and kicked. There is no reasonable possibility that Adams' testimony, offered a second time to impeach Lee on a collateral matter, would have resulted in a more favorable verdict. (*People v. Cudjo* (1993) 6 Cal.4th 585, 612.)

*Motion for New Trial*

Patton argues that the trial court erred in denying his motion for new trial based on "new" facts about the money dispute. Patton claimed that he, Adams, and Lee were filing fraudulent tax returns and that Lee spent Patton's share of the tax refund money. Patton conceded that he did not disclose the information to his attorney until after the trial. The trial court reasonably concluded that it was not "newly" discovered evidence and that further impeachment of Lee would not render a different result on retrial. (See *People v. Williams* (1962) 57 Cal.2d 263, 270 [new trial evidence must be newly discovered, not cumulative; defendant must show the evidence could not with reasonable diligence have been discovered and produced at trial].) Denying the motion for new trial, the trial court found that "Lee was already impeached with prior convictions that were serious, with the fact that he was in a gang, the fact that he had gone to prison. [¶] So, I don't believe that [if] the jury had heard that he was involved in some tax scheme, that that would have caused them to change their view of his credibility. . . . I don't believe it would have resulted in a different verdict. [¶] In addition, that evidence was available to the defense through Mr. Patton. If he was involved in this, he would have known of it and also Othella Adams would have known of it and that was not presented at trial."

A defendant has no due process right to withhold impeachment evidence and then, after a guilty verdict is entered, claim he is entitled to a new trial based on "newly discovered" evidence. Appellants defended on the theory that Lee was not credible and "should be put on trial for false accusations." The prosecution argued "Who do you believe in this case? Do you believe Nathan Lee also known as Fidget? Do you believe Othella Adams also, known as Mama Figueroa? [¶] That is what this case comes down to. It is that simple."

Lee may have been an unsavory character but he was a credible victim. He had been to prison for gang crimes and socialized with PDL gang members long after he renounced his gang membership. The prosecution argued that "[c]rimes in hell don't have angels for victims." The jury agreed. In a substantial evidence appeal, the existence

8

of conflicting inferences does not undermine the jury's determinations of credibility and disputed factual issues. (*People v. Millwee* (1998) 18 Cal.4th 96, 132.)

*Section 654*

Patton contends that the trial court erred in not staying the three year sentence on count 1 for assault because the robbery and assault was an indivisible course of conduct. (§ 654; *People v. Deloza* (1998) 18 Cal.4th 585, 591.) The evidence, however, shows that Lee was assaulted at different times and different locations, for different purposes. Patton confronted Lee in the street with the handgun, hit him in the face, and ordered Lee into the front yard. Patton punched Lee, robbed him of his money and cell phone, and hit Lee with the liquor bottle because he was "in violation" of gang rules. Lee was then taken into the house where he was punched and kicked unconscious. The trial court did not err in finding that Patton had different intents and objectives in committing the crimes. The first assault was to effectuate a robbery. The assault in the house, where Lee was kicked and beaten, was retaliatory because Lee had renounced his membership with the gang.

Where the assault is a 'gratuitous' act of violence that does not facilitate the robbery, it "has traditionally been viewed as 'incident' to the robbery for purposes of Penal Code section 654" and may be punished separately. (*People v. Nguyen* (1988) 204 Cal.App.3d 181, 190.) Patton completed the robbery and forced Lee into the house where he was kicked and beat unconscious. "This act constituted an example of gratuitous violence against a helpless and unresisting victim which has traditionally been viewed as not 'incidental' to robbery for purposes of Penal Code section 654. [Citations.]" (*Ibid.*)

*Presentence Custody Credits*

Patton contends, and the Attorney General agrees, that the trial court erred in calculating Patton's presentence custody credits. Patton was arrested on February 21, 2014 and sentenced on December 11, 2014, a total of 294 days actual custody. The trial court awarded 293 days actual custody. We modify the sentence to reflect that Patton was awarded 294 days actual custody plus 44 days good conduct credit (§ 2933.1, subd.

(a) [15 percent of 294 days = 44.1 days]; see *People v. Ramos* (1996) 50 Cal.App.4th 810, 816 [good conduct credit rounded down to nearest whole number]), for a total of 338 days presentence credit.

*Conclusion*

Butler's judgment of conviction and sentence are affirmed. We affirm Patton's conviction but modify the sentence to reflect that he was awarded 294 days actual custody and 44 days good conduct credit. The superior court clerk is directed to amend the December 11, 2014 sentencing minute order and abstract of judgment and to forward certified copies to the Department of Corrections and Rehabilitation.

NOT TO BE PUBLISHED.

YEGAN, Acting P. J.

We concur:

PERREN, J.

TANGEMAN, J.

Cathryn F. Brougham, Judge

Superior Court County of Los Angeles

_____

Sarvenaz Bahar, under appointment by the Court of Appeal for Defendant and Appellant, James Patton.

Lori E. Kantor, under appointment by the Court of Appeal for Defendant and Appellant, Jeffrey Ed Butler, Jr.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Shawn McGahey Webb, Supervising Deputy Attorney General, David F. Glassman, Deputy Attorney General, for Plaintiff and Respondent.