Filed 12/31/15  P. v. Brooks CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>DERRICK DWAYNE BROOKS,<br><br>    Defendant and Appellant. | A139494<br><br>(Contra Costa County<br>Super. Ct. No. 51213370) |

**I.**

**INTRODUCTION**

After a jury trial, appellant Derrick Dwayne Brooks was found guilty of assault with intent to commit rape (Pen. Code, § 220, subd. (a)) and assault by force likely to produce great bodily injury (Pen. Code, § 245, subd.(a)(1)).  The jury also found two enhancements because appellant personally inflicted great bodily injury upon the victim during the commission of a felony (Pen. Code, § 12022.7, subd. (a)) and great bodily injury in a sex offense (Pen. Code, § 12022.8).

On appeal, appellant contends that the trial court improperly admitted expert testimony about wound causation, and erred in excluding evidence of the victim's prior sexual conduct.  Appellant also claims that the prosecutor committed prejudicial misconduct during closing argument.  Finally, appellant asserts there was insufficient evidence to support the enhancement for great bodily injury.  We disagree, and affirm.

1

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

**A. *Prosecution Case*[1]**

On the night of October 30, 2011, Jane Doe went to a Halloween party with two female friends. After an hour, they left the party and went to a bar called Gregory's in Richmond so they could dance. Jane Doe began dancing with appellant who introduced himself as "Jody." Jane Doe and appellant went out to his car and drank a few sips of alcohol and talked about going out for breakfast. After the bar closed, the three women drove to Jane Doe's house and appellant followed in his truck. Jane Doe and appellant then rode in his truck to appellant's house, and Jane's friend Piere followed by herself in her own car. The three of them had drinks and danced but none of them was intoxicated.[2] Piere left to go home after about an hour.

Appellant walked Piere to her car, and when he returned he told Jane Doe that they were not going to breakfast. Appellant said he had a physical problem with sex and that he thought Jane Doe could help him with it. Jane Doe told him that she could not help him. Appellant responded by saying something to the effect that she was going to help him. Appellant pushed Jane Doe down onto the bed, and she told him "no" multiple times. Appellant pulled the zipper on her pants and tore it. He held both her arms above her head and pinned them down with his thumbs on her wrists. She freed one of her arms and swung at appellant with her wooden bracelet, breaking it. Appellant forced her pants down and rubbed his penis against her. He tried to put his penis in her vagina, but he was not successful because his penis was not erect. In trying to calm appellant, Jane told him she needed to get "situated" and she stood up as if to remove her pants. She tried to convince him that they should do it another time. She told appellant that she had herpes

---

[1] The following narrative includes only a general summary of the testimony of sexual assault response team (SART) examiner Anamaree Rea, a registered nurse, the details of which we discuss in detail below in connection with appellant's first assignment of error.

[2] During a later interview at the hospital, Jane Doe said she consumed a "fifth of tequila."

2

and he hit her on the side of the face, knocking her down. The blow rendered her unconscious, and when she awoke, appellant was in the bathroom.

Jane Doe stood up and grabbed some mail from appellant's dresser to help identify him later. Appellant told her to get her belongings and he would take her home. She agreed to let appellant take her home because she could not find her cell phone, her vision was blurred in her left eye from the blow, she was legally blind in her right eye, and she had no other way to get home. Appellant told her that he knew she would report it so he might as well take her to the police station. When they got to her house, he returned her phone.

When Jane Doe's daughter arrived home, she saw that the whole side of her mother's face was bruised and her eye was swollen shut. The daughter called the police and took Jane Doe to the hospital. At the hospital, Jane Doe was given pain medication and a nurse glued shut the cut near her eye.

When Jane Doe reported the incident to the San Pablo Police Department, she was sent to the county hospital for a SART exam. Nurse Rea, a sexual assault forensic examiner and SART nurse, examined Jane Doe. In conducting the exam, she identified one preexisting bruise on Jane Doe's right thigh. Jane Doe also had a "very large, swollen black-and-blue left eye" that she was unable to open. She had a laceration to her cheek that had been glued shut, and bruises on her wrists and the palm of her right hand. She also had bruises on her thighs and calves. Blue dye was used during a vaginal exam that showed Jane Doe had small tears and abrasions that had occurred within the last two to three days.

Following the assault, Jane Doe made several visits to the eye doctor. Her eye was swollen shut for "at least" a month. It took four to five months for the swelling to go down around the eye. Due to her appearance, she was asked not to return to work until the swelling and bruising were gone, which took approximately six months after the incident to resolve. In addition to the scar, the area around her eye remained tender to the touch and she still experienced pain as of the time of trial.

3

**B.** *Defense Case*

Appellant testified that he met Jane Doe at "a nightclub" called Gregory's and they danced together for "[q]uite a while." They went to his truck and drank from a bottle of Hennessy and they kissed. Later, Jane Doe and Piere came to appellant's apartment and he served them cocktails. He testified that he walked Piere to her car, and when he returned Jane Doe was naked on his bed. They had consensual sex and he rolled over to go to sleep. Jane Doe began "babbling" and he told her to stop talking. When she refused to stop talking, he told her he would take her home. He testified that Jane Doe became violent and tried to hit and kick him. She hit him in the face and he started swinging back, and "next thing I know she's laying on the bed and her eye is cut and swollen." He offered to take her to the hospital, but she refused. She told him he was going to pay for this and she would tell the police. He offered to take her to the police station.

The triage nurse from Kaiser hospital who admitted Jane Doe testified that based on her intake report, Jane Doe told her that she was attacked on Fruitvale Avenue. The parties stipulated that Fruitvale Avenue is in Oakland, California. Appellant lived at an apartment in San Pablo, California. The triage nurse, however, had no recollection of Jane Doe and could only rely on the triage forms.

Jane Doe's friend Piere testified that the zipper on Jane Doe's pants would not stay up later in the evening at appellant's house. She said she didn't "know that the zipper was broken," but that it was "out of line." When defense counsel asked Piere if the pants continually fell down, she stated "I don't recall that." She testified that while at appellant's apartment, appellant and Jane Doe were in the bedroom talking and laughing. On cross-examination, she testified that Jane Doe was not drunk that evening. She also testified she only remembered helping Jane Doe with her zipper once that evening at appellant's house.

**C.** *Verdict and Sentencing*

The jury convicted appellant of all counts and found true the special allegations of great bodily injury. The court sentenced appellant to nine years in state prison.

4

## III.

## DISCUSSION

### A. *The Testimony of the SART Examiner Was Properly Admitted at Trial*

Appellant filed a  motion in limine prior to trial to limit the testimony of SART nurse Anamaree Rea.  Appellant sought to exclude any evidence "regarding the causation of any injuries or forensic findings as well as exclusion of any opinion that her findings are consistent with complaining witness's alleged account of sexual assault."  Appellant argued that although Rea was qualified to testify about the appearance of Jane Doe's injuries, she was not qualified to testify that they were consistent with sexual assault.

At a hearing on the motion, the parties agreed that under prevailing law, the prosecution could not elicit testimony from Rea that Jane Doe's injuries were consistent with sexual assault, but could elicit testimony that the injuries were not inconsistent with sexual assault.  The court agreed that was the proper approach.[3]

Nurse Rea testified that she was a licensed sexual assault forensic examiner and the county coordinator for the SART program.  She had conducted approximately 1500 sexual assault exams during the course of her career, and had conducted 867 exams since 2006.  She was certified in "forensic exams, wound documentation and injuries, photo of injuries, interview of both adult and pediatrics, and collection of biological forensic evidence."  Rea had attended two courses in documenting wounds, one specifically relating to sexual assault injuries.  As to Jane Doe's injuries and bruises, Rea testified that Jane Doe had bruises on her right arm and wrist from being grabbed and held down.  When Rea testified Jane Doe had a bruise on her right thigh that was consistent with a pattern of "the tips of five fingers," defense counsel objected.

---

[3] In his brief, appellant asserts that the court held a hearing pursuant to Evidence Code section 402 regarding Nurse Rea's testimony.  As respondent correctly explains, the section 402 hearing concerned the testimony of Contra Costa County Sheriff's Department Sergeant Antonio Benavides, who was qualified as an expert in delayed and evolving disclosures in sexual assault cases, not Rea.  The court made no ruling about Rea's testimony under section 402 at this hearing.

Outside the presence of the jury, the court stated that an expert cannot testify that injuries are consistent with sexual assault, but under *People v. Hogan* (1982) 31 Cal.3d 815 (*Hogan*), disapproved on other grounds in *People v. Cooper* (1991) 53 Cal.3d 771, an expert can testify that injuries are not inconsistent with sexual assault. "But a bruise on the thigh which she says is consistent with . . . fingertips is not opining on the ultimate conclusion of a sexual assault."

Prior to resuming Nurse Rea's testimony the following day, the court held a further hearing. The court found that Rea was an expert in the area of sexual assault forensic examinations, the ability to "recognize and document wounds," and evidence collection. Defense counsel objected that Rea's testimony was "making the leap to causation." The court stated that Rea did not testify as to causation, but that the court would make it clear to the jury that she was not an expert in the causation of wounds.

When trial resumed, the court instructed the jury: "The court found [Rea] to be an expert in the area of sexual assault forensic examinations and the ability to recognize and document wounds and also an expert in evidence collection. She is not an expert in the causation of wounds."

Nurse Rea then testified she had training in the recognition of bruises. Rea explained that dark black or red bruises are a new wound versus something that has faded to yellow or green, which would be an older wound. She testified that the five red marks on Jane Doe's thigh were "new" bruises. Rea testified that Jane Doe had red and black bruises on her face, bruises, swelling, and marks on her left wrist, bruising on her inner left thigh and knee, and multiple bruises on her left shin.

At the conclusion of the trial, counsel filed a motion for new trial arguing that Nurse Rea had not been qualified as an expert in causation, but nevertheless was allowed to testify as such about the source and timing of Jane Doe's bruises. Counsel argued he was ineffective in failing to present a defense expert to rebut Rea's testimony. The court ruled that "Rea's testimony was within the scope of what she is an expert in. In fact, the Court admonished the jury not to consider her as an expert in the area of wound

6

causation, was very specific about that, and reiterated the admonishment in her testimony."

On appeal, appellant argues that Rea's testimony that Jane Doe's bruises were new and the bruise on her thigh was consistent with a five-finger pattern exceeded the scope of her expertise. He contends it was improper testimony on wound causation, and corroborated Jane Doe's testimony that the bruises were caused by sexual assault.

Under Evidence Code section 720, subdivision (a), "[a] person is qualified to testify as an expert if he has special knowledge, skill, experience, training, or education sufficient to qualify him as an expert on the subject to which his testimony relates."

We will uphold the trial court's ruling on expert qualifications absent an abuse of discretion. (*People v. Wallace* (2008) 44 Cal.4th 1032, 1062–1063; *People v. Bloyd* (1987) 43 Cal.3d 333, 357.)

Appellant relies on *Hogan*, *supra*, 31 Cal.3d 852 and *People v. Bledsoe* (1984) 36 Cal.3d 236 (*Bledsoe*) to support his argument that the testimony was improperly admitted. In *Hogan*, the California Supreme Court concluded a criminologist was not qualified to testify about blood spatter because he had no training or experience on blood spatter patterns. (*Hogan*, at p. 852.)

In contrast to the expert in *Hogan*, here Nurse Rea had both formal training and substantial experience in her professional field. On this point, this case is more analogous to *People v. Tuggle* (2012) 203 Cal.App.4th 1071 (*Tuggle*). In *Tuggle*, the defendant objected to the testimony of sheriff's deputy Collins about fingerprints because he was "not a criminalist," and because no "foundation [had been] laid for this person to testify as a forensic expert because he's a deputy who has been trained in analyzing fingerprints." (*Id.* at p. 1078.) Collins had been part of the sheriff's crime lab for seven years and prior to that he had been a deputy for 19 years. (*Id.* at pp. 1077-1078.) He had training in the fingerprint unit and had taken several fingerprint identification courses. Collins testified about the likelihood of fingerprints remaining on an object for three years time. (*Id.* at p. 1078.) The defendant argued that Collins's expertise in the identification of fingerprints did not qualify him to testify about the durability of

7

fingerprints.  (*Id.* at p. 1079.)  The court disagreed, and held that his training and experience on the identification of fingerprints included the circumstances under which fingerprints may be lifted from an object.  (*Id.* at p. 1080.)  "[C]omplaints regarding the degree of an expert's knowledge go more to the weight of the evidence than to its admissibility.  [Citation.]"  (*Ibid.*)

Similarly, in *People v. Robinson* (2005) 37 Cal.4th 592, a witness qualified to testify concerning gunshot wounds could render an opinion that based upon the location of the wound, the shooter was likely standing next to a kneeling victim.  "Contrary to defendant's suggestions that such testimony could be given only by one qualified as a crime scene reconstructionist, the opinion evidence here at issue did not require that the witness have expertise *beyond* that which was shown—that is, that he was an experienced pathologist who possessed extensive familiarity with gunshot wounds."  (*Id.* at pp. 631-632.)

In *Bledsoe*, the Supreme Court considered the admissibility of expert testimony on rape trauma syndrome, and concluded the evidence was not sufficiently reliable to be admissible to prove a person who suffered rape trauma syndrome had, in fact, been raped. (*Bledsoe*, *supra*, 36 Cal.3d at p. 251.)

We agree that had Nurse Rea testified the bruises in a fingertip pattern on Jane Doe's thigh were consistent with sexual assault, this testimony would be improper under *Bledsoe.*  But this was not the nature of Rea's testimony.  Rea did not testify that the injuries were consistent with any activity, such as defendant using his hand to grab Jane Doe's thigh, and she made no mention of sexual assault.  Rea testified at trial that Jane Doe had a bruise on her right thigh that was consistent with a pattern of "the tips of five fingers."  The trial court found that this testimony was "not opining on the ultimate conclusion of a sexual assault."

Appellant disagrees, claiming that this testimony "impermissibly corroborated Jane Doe's testimony that appellant forcibly pulled her legs apart while attempting to sexually assault her."  While the jury could have drawn this inference from the fact that Jane Doe had bruises consistent with a handprint on her thigh, Nurse Rea did not opine

8

that this was the cause, and in fact, she made no direct connection between the injury and the alleged sexual assault.

In addition, Rea's testimony that the bruises were new based upon their color was well within her expertise. Furthermore, as respondent points out, the fact that the bruises were new was not in dispute. Appellant's argument was not that Jane Doe was uninjured, but that any injuries were the result of consensual sex and the altercation that followed.

Finally, we note that appellant had the opportunity to cross-examine Nurse Rea about her observation that the bruises appeared to be fingerprints. Appellant's complaints about the extent of Rea's knowledge went to the weight of the evidence, not its admissibility. (*Tuggle*, *supra*, 203 Cal.App.4th at p. 1080; *People v. Bolin* (1998) 18 Cal.4th 297, 322 [any issue about specific knowledge went to the weight, not the admissibility of the evidence].)

We conclude that the court properly admitted Nurse Rea's testimony and provided a careful limiting instruction to the jury.

## B. *Evidence of Jane Doe's Prior Sexual Conduct Was Properly Excluded*

On appeal, appellant argues that the trial court erred in excluding evidence of Jane Doe's prior sexual conduct both because it would have impeached her credibility, and would have provided an alternative explanation for her injuries.

Before trial testimony commenced, the prosecution filed a motion in limine to exclude reference to any prior sexual conduct by Jane Doe pursuant to Evidence Code section 782 (section 782).[4] Appellant filed a counter motion to admit, and to allow cross-examination of Nurse Rea, a statement contained in the SART exam report that Jane Doe had prior sexual contact within 10 days of the exam. Appellant argued that Jane Doe's bruises "makes the possible causation of such bruising by other sexual conduct unrelated to [appellant] relevant to this case *separate and apart* from its evidentiary value with respect" to Jane Doe's credibility.

---

[4] Section 782 precludes the introduction of evidence of sexual conduct of a victim if it offered to attack the victim's credibility without an offer of proof as to the relevancy of the evidence.

9

At a hearing on the motion, defense counsel argued that evidence regarding Jane Doe's prior sexual contact was relevant to appellant's questioning Nurse Rea about the conclusions in the SART exam form. Counsel argued it was also relevant under section 782. In support of the exclusion of any such evidence, the prosecution pointed out that defense counsel had failed to demonstrate that the fact Jane Doe had sex seven or more days before the SART exam could have caused the injuries documented in the exam. Counsel also noted that the defense had proffered no medical testimony that Jane Doe's injuries could have been seven or more days old at the time of the exam. The prosecutor suggested that the types of questions about prior sexual contact that defendant wanted to elicit were exactly what the rape shield statute, section 782, was designed to prevent. Defense counsel countered that he was not seeking to introduce evidence of Jane Doe's prior sexual partners or her promiscuity, he was "simply trying to cross-examine on the SART exam," and it was not a section 782 issue.

The court ruled that Jane Doe's prior sexual conduct was not relevant and allowing the evidence in "would just be an end game around [section] 782." The court stated that questioning the nurse about the "prior sexual conduct of the alleged victim—is actually, as I said, trying to get around [section] 782 and those laws that were enacted to protect . . . alleged victims of sexual assault."

A trial court is "vested with broad discretion to weigh a defendant's proffered evidence, prior to its submission to the jury, 'and to resolve the conflicting interests of the complaining witness and the defendant.' [Citation.]" (*People v. Mestas* (2013) 217 Cal.App.4th 1509, 1514.) "A trial court's ruling on the admissibility of prior sexual conduct will be overturned on appeal only if appellant can show an abuse of discretion. [Citation.]" (*People v. Chandler* (1997) 56 Cal.App.4th 703, 711 (*Chandler*).)

Under California's rape shield law, instances of a victim's past sexual conduct are inadmissible to prove consent. (Evid. Code, § 1103, subd. (c)(1); *People v. Fontana* (2010) 49 Cal.4th 351, 354 (*Fontana*).) Therefore, Evidence Code section 1103, subdivision (c) precludes a defendant from introducing opinion, reputation, and specific instances evidence of the alleged victim's previous sexual conduct with persons other

10

than the defendant to prove the victim consented to the alleged sexual acts. However, Evidence Code section 1103, subdivision (c)(4) does allow evidence of prior sexual history relevant to the credibility of the victim to be admitted if the defendant complies with the procedures in section 782 and its probative value outweighs the danger of unfair prejudice. (*Fontana*, at p. 354.)

Section 782 requires a defendant seeking to introduce evidence of the witness's prior sexual conduct to file a written motion accompanied by an affidavit containing an offer of proof concerning the relevance of the proffered evidence to attack the credibility of the victim. (*Mestas*, *supra*, 217 Cal.App.4th at p. 1514; § 782, subd. (a)(1), (2).) The trial court does not need to conduct a hearing unless it first determines that the defendant's sworn offer of proof is sufficient. (*Mestas*, at p. 1514; § 782, subd. (a)(2).) "The credibility exception has been utilized sparingly, most often in cases where the victim's prior sexual history is one of prostitution. [Citations.]" (*Chandler*, *supra*, 56 Cal.App.4th at p. 708.)

Here, there was no requisite showing of relevance by the defense as required under section 782, nor has appellant convinced us on appeal that this evidence of a single incident of prior sexual contact had any relevance to Jane Doe's credibility.

Alternatively, appellant argues that the evidence from the SART report that Jane Doe had a sexual encounter approximately 10 days before the encounter with appellant was relevant to explain her injuries. In *Fontana*, the defendant sought to introduce evidence the victim had prior sexual contact with another person on the day of the alleged attack. An affidavit was filed presenting expert testimony which suggested the injuries occurred within in the same day, thereby making evidence of the prior sexual contact relevant. A doctor and a nurse testified that the victim's injuries, other than to her neck, could have been caused during a consensual encounter. (*Fontana*, *supra*, 49 Cal.4th at p. 364.) The Supreme Court held that the trial court should have conducted a hearing about the victim's sexual conduct on the date of the incident because defendant's offer of proof was sufficient. (*Id.* at p. 365.) The expert testimony supported defendant's argument that the injuries could have been caused by consensual sex, and could have

11

occurred within a three-to-five-hour timeframe of the strangulation injuries. (*Id.* at p. 366.)

Unlike *Fontana*, appellant's offer of proof was not sufficient to warrant a hearing. Appellant failed to demonstrate the relevance of Jane Doe's prior sexual contact within the previous 10 days. Appellant's offer of proof was simply that on the SART form, Nurse Rea wrote that Jane Doe had other vaginal intercourse within 10 days, but appellant presented no medical evidence that consensual sex within the prior 10 days could have caused Jane Doe's injuries.

The offer of proof in *Fontana* convinced the high court that "[t]he offer of proof was not a fishing expedition. Rather, defendant identified a specific basis, consisting of hearsay recorded in hospital records and statements relayed by the prosecutor, for believing that [the complaining witness] had engaged in sexual activity during the relevant time period" that could have caused her injuries. (*Fontana*, *supra*, 49 Cal.4th at p. 367.) In contrast, here defense counsel simply speculated that Jane Doe's injuries could have been caused by the earlier sexual contact. Without any medical or scientific evidence to support this theory, or with which to undermine Nurse Rea's expert opinion that the bruises were new and the vaginal tears occurred within two to three days of the exam, the evidence was not relevant.

Further, as explained above, appellant's theory at trial was that Jane Doe's injuries were caused during consensual sex with appellant or during the fight afterwards that Jane Doe initiated. Appellant did not contend that Jane Doe's injuries were caused by someone other than appellant. Indeed, there was no dispute that the injury to Jane Doe's face and eye occurred at appellant's apartment. Jane Doe had a bruised and swollen face, and a cut near her eye that required immediate medical attention the night of the encounter in appellant's apartment.

Appellant's claim is not aided by his reliance on the federal habeas case applying Oregon law in *LaJoie v. Thompson* (9th Cir. 2000) 217 F.3d 663. That case involved prior sexual molestations of a child recorded in the child's social services file. The court held this "uncontested" evidence of prior abuse should not have been precluded based on

12

defendant's failure to follow procedural requirements by giving notice of his intention to seek its admission. (*Id.* at pp. 665, 670.) Here, the court did not preclude the evidence based on a procedural error, but rather found that appellant had not made a sufficient offer of proof that the evidence was relevant. The court concluded that the evidence was not relevant and allowing the evidence would be "an end game around [section] 782."

To the extent appellant argues that preclusion of the evidence violated his constitutional right to cross-examination, we find no merit to this claim. Both Jane Doe and Nurse Rea were subject to cross-examination. Counsel could have asked Nurse Rea if Jane Doe's injuries were consistent with consensual sex, and inquired further about the freshness of Jane Doe's bruises. Defense counsel elected not to pursue these lines of inquiry perhaps concluding the answers would not have been beneficial to appellant's defense. Therefore, it was not error to limited appellant's examination of Nurse Rea as indicated above, and not to allow inquiry concerning the SART report note about Jane Doe's prior sexual activity days before the incident in question.

## C. *Prosecutorial Misconduct in Closing Argument*

Appellant also contends that the prosecutor engaged in misconduct during closing argument by stating that Jane Doe's injuries were consistent with sexual assault, vouching for the credibility of prosecution witnesses, disparaging defense counsel, and improperly shifting the burden of proof. Appellant, however, objected only to the comments by the prosecutor appellant asserts amounted to improper burden shifting. In the absence of objections to these other comments, we conclude appellant has forfeited his claim of misconduct on appeal. (*People v. Panah* (2005) 35 Cal.4th 395, 462 (*Panah*); *People v. Edwards* (2013) 57 Cal.4th 658, 740 (*Edwards*) ["defendant did not object to the prosecutor's argument, no exception to the general requirement of an objection is applicable, and his claim is therefore forfeited on appeal"].)

Appellant argues that the pattern of prosecutorial misconduct rendered objections unnecessary to preserve the issue for appeal, essentially arguing that objections would have been futile. There is, however, no support in the record for this exception. (See *Panah*, *supra*, 35 Cal.4th at p. 462 [a defendant must find support for a claim an

13

objection is futile in the record because the "ritual incantation that an exception applies is not enough"].) We note too that defense counsel showed no inhibition from objecting during the prosecutor's closing argument; defense counsel objected a total of eight times during the prosecution's closing and rebuttal arguments. Appellant has not demonstrated that the trial court had a negative response to his objections, or that a curative admonition would have been ineffective. (*People v. Arias* (1996) 13 Cal.4th 92, 159.)

Therefore, we only address appellant's claim of prosecutorial misconduct that was properly preserved.[5]

During rebuttal, the prosecutor stated that Nurse Rea and Officer Benavides presented testimony based on their specialized training. "And they're specialized to be challenged. They're the people that the defense can go after . . . . And they were here for him to talk about that to, and he never did. And he never presented anything to you that this was out of line with . . . sexual assault." The prosecutor continued defendant "does not have the burden to disprove anything. But when . . . they call witnesses, when they ask questions, those are evaluated in the same—with the same laws and the same instructions and with the same burden, not anything special and not anything different." The prosecutor then stated: "And I don't have to prove to you exactly what happened. I don't have to prove to you a crystal clear picture." Defense counsel objected: "misstates the standard," and the court overruled the objection. The prosecutor continued: "I have to prove to you that this happened beyond a reasonable doubt."

" 'We accord the prosecutor wide latitude in describing the factual deficiencies of the defense case.' [Citation.]" (*Edwards*, *supra*, 57 Cal.4th at p. 740, quoting *People v. Cash* (2002) 28 Cal.4th 703, 733.) In *People v. Bradford* (1997) 15 Cal.4th 1229, the Supreme Court concluded that a prosecutor's comments on a defendant's failure to contradict prosecution evidence was not misconduct. In closing argument in a homicide case, the prosecutor stated that the defense had introduced "no evidence" about a blood-

---

[5] We do address these other claims of prosecutorial misconduct in connection with appellant's contention that the failure of his trial counsel to object constituted ineffective assistance of counsel. (See section III.D., *infra*.)

14

stained mat, had failed to call an expert witness to testify to rebut the conclusions of the coroner, and failed to call any alibi witnesses. (*Id.* at p. 1339.) The court found this was not improper comment on the defendant's failure to testify and it did not improperly shift the burden of proof. (*Id.* at pp. 1339-1340.) "A distinction clearly exists between the permissible comment that a defendant has not produced any evidence, and on the other hand an improper statement that a defendant has a duty or burden to produce evidence, or a duty or burden to prove his or her innocence." (*Id.* at p. 1340.)

As in *Bradford*, it was permissible for the prosecutor to comment that the defense had not challenged the testimony of the prosecution's expert, and had failed to present any evidence that undermined the prosecution's theory of sexual assault. This argument did not improperly shift the burden of proof. Further, in arguing that appellant failed to contradict the evidence of sexual assault by cross-examining the prosecution's witnesses or calling his own witnesses, the prosecution reiterated that appellant "does not have the burden to disprove anything."

Appellant's complaint about the prosecutor's "crystal ball" comment is equally unavailing. Once again, this comment was in direct response to defense counsel's closing argument during which counsel stated that the prosecution was required "to paint you a crystal clear picture" Defense counsel rhetorically asked the jury: "Do you have a crystal clear picture of exactly what happened? No."

Appellant's challenges to the prosecutor's rebuttal must be evaluated in light of the defense argument to which it replied. (*People v. Chatman* (2006) 38 Cal.4th 344, 386 (*Chatman*).) "Arguments by the prosecutor that otherwise might be deemed improper do not constitute misconduct if they fall within the proper limits of rebuttal to the arguments of defense counsel. [Citation.]" (*People v. Cunningham* (2001) 25 Cal.4th 926, 1026.) The prosecutor's use of the phrase "crystal clear picture" was in response to defendant's argument that this was the standard the prosecution was required to meet. The prosecutor's statement that she did not have to paint a crystal clear picture was not improper, it did not attempt to diminish the prosecution's burden of proving guilt beyond a reasonable doubt, and it did not seek to shift the burden of proof to the defense.

15

Appellant also claims that it improperly attempted to shift the burden of proof away from the prosecution when the prosecutor urged the jury to think back to what counsel had said during opening statements. In this regard, the prosecutor stated: "[Y]ou were provided information from myself and defense counsel as to what . . . we believed the evidence would show. [¶] And I urge you to think back because I'm very confident that the evidence has not shown what defense counsel suggested to you that it [would]." The prosecutor urged the jury to think about Jane Doe's testimony and what she told the police and the hospital staff. "So I ask you to keep those in mind and think back as to the promises that were not delivered here in court." Defense counsel objected that this improperly shifted the burden and the court overruled the objection.

Appellant again argues this is misconduct without any citation to authority. We conclude the prosecutor did not improperly shift the burden of proof to appellant. "[T]he prosecutor may highlight the discrepancies between counsel's opening statement and the evidence. [Citation.]" (*People v. Bemore* (2000) 22 Cal.4th 809, 846; *Chatman*, *supra*, 38 Cal.4th at p. 385 [a prosecutor can comment on discrepancies between defense counsel's opening statement and the evidence presented and point out gaps in defense counsel's argument].)

If there remained any doubt that the arguments of the prosecution were an improper attempt to shift the burden of proof to the defense, we note that "had any juror interpreted the comments to indicate that defendant had a burden of proof, this impression would have been dispelled by the instructions and the numerous reminders to the jurors that the People bore the burden of proving defendant's guilt. [Citation.]" (*People v. Redd* (2010) 48 Cal.4th 691, 740.) Here, the court instructed the jury that the prosecution had the burden of proof, and the prosecutor acknowledged several times in closing argument and rebuttal that she had the burden of proof. The court also instructed the jury that nothing the attorneys say is evidence. "In their opening statements and closing arguments the attorneys discuss the case, but their remarks are not evidence." Arguments of counsel " 'generally carry less weight with a jury than do instructions from the court. The former are usually billed in advance to the jury as matters of argument,

16

not evidence, [citation], and are likely viewed as the statements of advocates; the latter, we have often recognized, are viewed as definitive and binding statements of the law.'. . ." (*People v. Centeno* (2014) 60 Cal.4th 659, 676 (*Centeno*), quoting *Boyde v. California* (1990) 494 U.S. 370, 384.)

In conclusion, we note our rejection of defendant's claims of misconduct necessarily forecloses his additional claim of cumulative error and prejudice. (*Panah*, 35 Cal.4th at p. 464.)

**D.** *Appellant Has Failed to Demonstrate Ineffective Assistance of Counsel*

Appellant argues that if his remaining claims of prosecutorial misconduct are deemed forfeited because of counsel's failure to object below, that forfeiture is due to the ineffectiveness of his trial counsel. Appellant enumerates three such additional instances of alleged misconduct to which no objections were made.

The first involved two comments about Nurse Rea's testimony: (1) "And the SART nurse. Her evidence is extremely, extremely important because it's corroborating evidence," and (2) "those abrasions [shown in a blue dye test] . . . are consistent with everything Jane Doe says, the rubbing on the outside of her vagina, and these injuries are consistent with Jane Doe's testimony of what happened."

The second involved the prosecutor encouraging the jury to evaluate Jane Doe's demeanor in deciding her credibility, which counsel described as "traumatized." The prosecutor went on to note that Jane Doe testified for a day and half and she was upset. "The defense attorney yelled at her, berated her, made fun of her, called her a liar. This was for the second time because he had done it at the preliminary hearing. And she still came back to tell you what happened again. [¶] And she was courageous for doing that."

The third was in response to statements made in appellant's closing argument. Defense counsel referred to Nurse Rea and Sergeant Benavides as "part of a team of people that [the prosecutor] is a part of, that try to get convictions." In her rebuttal, the prosecutor stated: "And yes, Ana Rea and Sergeant Benavides and myself work in a team in the community, in our community that investigate, evaluate, prosecute, file, charge, and convict sexual assault. That's what we do. That doesn't mean that we should

17

somehow be—or that those witnesses should be evaluated skeptically. That doesn't mean that. [¶] That actually means that they're specialized and that they know what they're looking for so that they can provide you that evidence."

To establish ineffective assistance of counsel, a "defendant must demonstrate that: (1) his attorney's performance fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been more favorable to the defendant. . . ." (*People v. Stanley* (2006) 39 Cal.4th 913, 954, citing *Strickland v. Washington* (1984) 466 U.S. 668, 688, 694.) A reasonable probability is a probability sufficient to undermine confidence in the outcome. (*Ibid.*)

We begin with the observation that even if the prosecutor's statements were improper, defendant would still not be entitled to relief. "[E]xcept in those rare instances where there is no conceivable tactical purpose for counsel's actions, claims of ineffective assistance of counsel should be raised on habeas corpus, not on direct appeal." (*People v. Lopez* (2008) 42 Cal.4th 960, 972.) This is especially true when the alleged incompetence arises from counsel's failure to object. (*Ibid.*)

When the record on direct appeal sheds no light on why counsel failed to act in the manner challenged, defendant must show that there was " ' "no conceivable tactical purpose" ' for counsel's act or omission. [Citations.]" (*People v. Lewis* (2001) 25 Cal.4th 610, 675.) On this record, appellant has failed to demonstrate that there was no tactical reason for counsel's failure to object.

First, the prosecutor's statements about Nurse Rea's testimony were not misconduct, and thus it would not be expected to elicit an objection. The trial court's ruling about the scope of Rea's testimony did not preclude the prosecutor from drawing inferences from her testimony in closing argument. (*People v. Morales* (2001) 25 Cal.4th 34, 44 ["At closing argument a party is entitled both to discuss the evidence and to comment on reasonable inferences that may be drawn therefrom. [Citations.]"]; *People v. Hill* (1998) 17 Cal.4th 800, 819 [a prosecutor is given wide latitude in closing argument and can draw reasonable inferences from the evidence].)

18

Second, the prosecutor's statements about Jane Doe being subject to harsh cross-examination first at the preliminary hearing and later at trial were intended to address only the issue of her credibility. (See *People v. Tully* (2012) 54 Cal.4th 952 [prosecutor's statements in closing argument about defense counsel attacking the victim were permissible because they went to the issue of the witness's credibility].) While the comments did cast defense counsel in an unfavorable light, the prosecutor did not call defense counsel unprofessional, or question his integrity. Further, counsel may not have objected because the prosecutor's statements about his harsh treatment of Jane Doe may have been accurate.

Finally, the prosecutor's statements about Nurse Rea and Sergeant Benavides being part of the same "team" were a direct response to defense counsel's argument calling them a "team." As we noted above, "[a]rguments by the prosecutor that otherwise might be deemed improper do not constitute misconduct if they fall within the proper limits of rebuttal to the arguments of defense counsel. [Citation.]" (*Cunningham*, *supra*, 25 Cal.4th at p. 1026.) Additionally, defense counsel may have made the tactical decision that it was to his client's benefit to allow the jury to question the credibility of the two experts because they worked closely with the prosecution and might therefore be biased.

We conclude that appellant had not demonstrated that he suffered prejudice by counsel's failure to object, as there is no substantial likelihood that a different result would have been achieved had counsel objected. As we have already pointed out, none of the alleged instances raised by appellant was misconduct. Also, the evidence pointing to appellant's guilt was strong. Finally, the court instructed the jury that the arguments of counsel were not evidence and we assume the jury followed these instructions. (See *Centeno*, *supra*, 60 Cal.4th at p. 676.)

E. *There Was Sufficient Evidence of Great Bodily Injury*

Appellant lastly contends there was insufficient evidence presented that Jane Doe suffered great bodily injury under either enhancement found true by the jury. We disagree.

19

As to count one, the jury found true the special allegation that appellant inflicted great bodily injury during a sex offense (Pen. Code, § 12022.8). As to count two, the jury found true the allegation that appellant inflicted great bodily injury during the commission of a felony (Pen. Code, § 12022.7, subd. (a)). Penal Code section 12022.7, subdivision (a) states: "Any person who personally inflicts great bodily injury on any person other than an accomplice in the commission of a felony or attempted felony shall be punished by an additional and consecutive term of imprisonment in the state prison for three years." Penal Code section 12022.8 provides the same definition as section 12022.7, subdivision (a) for great bodily injury. Great bodily injury is "significant or substantial injury." (*People v. Escobar* (1992) 3 Cal.4th 740, 749-750.) An injury need not be permanent or cause prolonged bodily damage to be a significant or substantial injury. (*Id*. at p. 750.)[6] "Proof that a victim's bodily injury is 'great'—that is, significant or substantial within the meaning of section 12022.7—is commonly established by evidence of the severity of the victim's physical injury, the resulting pain, or the medical care required to treat or repair the injury. [Citations.]" (*People v. Cross* (2008) 45 Cal.4th 58, 66.) Furthermore, "determining whether a victim has suffered physical harm amounting to great bodily injury is not a question of law for the court but a factual inquiry to be resolved by the jury. [Citations.]" (*Id.* at p. 64.)

Jane Doe suffered a "very large, swollen black-and-blue left eye" that she was unable to open. Her eye was swollen shut for "at least" a month, and it took four to five months for the swelling to go down. Due to her appearance, she was asked not to return to work until the swelling and bruising were gone, approximately six months after the incident. The injury required her to make several visits to the eye doctor. The injury to her left eye was especially traumatic because she has been legally blind in her right eye since birth.

---

[6] Appellant incorrectly relies upon the standard in *People v. Caudillo* (1978) 21 Cal.3d 562,which was disapproved of by our Supreme Court in *People v. Escobar* (1992) 3 Cal.4th 740, 749-750.

She also suffered a laceration to her cheek that had to be treated and glued shut. It resulted in a scar and the area around her eye remained tender to the touch. She still experienced pain at the time of trial. Jane Doe also had bruises on her wrists, hands, arms and legs after the assault. This evidence is more than sufficient to support the jury's finding that appellant personally inflicted great bodily injury. (See *People v. Jaramillo* (1979) 98 Cal.App.3d 830, 836 [finding great bodily injury where the victim suffered multiple bruises with swelling that were visible for several days and painful to the touch]; *People v. Muniz* (1989) 213 Cal.App.3d 1508, 1520 [finding great bodily injury where the victim was hit in the face with such force that she lost consciousness and the injuries, "while not permanent, were more than merely transitory. Her bruises lasted four months."]; *People v. Wallace* (1993) 14 Cal.App.4th 651, 665 [upholding great bodily injury enhancement where one of the victims suffered cuts to her wrists and ankles and numbness in one finger lasting two months].)

## IV.

## DISPOSITION

The judgment is affirmed.

_____
RUVOLO, P. J.


We concur:


_____
REARDON, J.


_____
STREETER, J.


A139494, *People v. Brooks*